A. G. & S. MINING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9229.    Promulgated November 7, 1927.

Value of leasehold on coal lands at the date of acquisition for depletion purposes determined.

*H. A. Heilman, Esq.*, for the petitioner.
*M. N. Fisher, Esq.*, for the respondent.

This proceeding is for a redetermination of income and profits taxes for the years 1918 to 1922, inclusive. The deficiency notice sets out the respondent's determination as to the various years as follows:

| Year | Deficiency | Overassessment |
|------|-----------|----------------|
| 1918 | | $127.37 |
| 1919 | | |
| 1920 | $6,122.72 | |
| 1921 | | |
| 1922 | | 360.81 |
| Total | 6,122.72 | 488.18 |
| Net deficiency | 5,634.54 | |

The question raised is the value of the leasehold for depletion purposes.

### FINDINGS OF FACT.

The petitioner is a Pennsylvania corporation with its principal office in Kittanning. It succeeded a partnership composed of Joseph L. Apple, Arthur S. Gruskin, and Mark H. Snyder. The partnership was engaged in the coal business and prior to securing the leasehold hereinafter mentioned, the several partners had spent considerable time and money prospecting in various places for coal properties.

On or about September 18, 1917, by a certain indenture entered into between Mark H. Snyder, for the partnership, and one J. H. Painter, the partnership became the lessee of the coal underlying approximately one hundred acres of land located some three-fourths of a mile from the outskirts of Kittanning, Pa. The lease granted " to the lessee the right and privilege of mining and removing all the

merchantable and workable coal lying and being in and under all that certain tract of land located * * *," together with the necessary rights for developments and operations. The consideration for the lease was a minimum royalty of $600 per year payable monthly after the first year, the lessor's royalty per net ton to be 15 cents unless lessee should fail to make a profit of 25 cents per net ton in which event the royalty would be reduced to 10 cents per ton. The term of the lease was 10 years.

The leasehold fronted on the Pennsylvania Railroad and the Allegheny River and was within the Buffalo shipping district, thereby securing a lower rate than Pittsburgh freight by 25 cents per ton. Labor was plentiful because the miners could live in Kittanning, and this fact saved the partners the expense of constructing a mine village. Transportation facilities were good as the mine had street car service from Kittanning and also was easily accessible by automobile. Power for operating was purchased from the West Penn Power Co.

The partners partially developed the property prior to incorporation, installing machinery, driving the entries, and building their own railroad siding. They put in mine cars, cutting machines, rails, pit mouths, an incline, tipples, a blacksmith shop, and certain other mine equipment. The total cost of preparing the mine for operation was $32,000. The respondent admitted that this amount represented such cost and used the same for depreciation purposes.

On or about November 12, 1918, the partners incorporated, turning over the mine and the leasehold to the corporation for $75,000 in capital stock. The values allocated to the assets were $32,000 for the plant, equipment and development and $43,000 for the leasehold.

In August or September of 1918, Wallwork, a coal operator, and his father, located two and one-quarter miles north of petitioner's mine, investigated the property in question with the view of purchasing the same. After their investigation, they offered to purchase the property for $75,000. Their offer was made with full knowledge of the royalty terms of the lease and was based upon their own estimates of the merchantable coal available, the value of the mine equipment, the location of the mine, shipping, labor, and other facilities. Thereafter in August, 1919, the Wallworks again offered to purchase the property from the petitioner. Their last offer was for $97,000.

The partners also received an offer to purchase the property just prior to incorporation from Davis, Kops & Co., a Pittsburgh brokerage house. This offer was for $75,000. About a year later, namely, on October 8, 1919, Davis, Kops & Co. advised petitioner that they would pay approximately $93,750 for the property, accompanying their letter with a certified check for $5,000.

The tonnage of merchantable coal available was approximately 120,000 tons and it was estimated that the coal would be worked out in six or seven years.

OPINION.

MORRIS: It appears from the deficiency notice that the only year in which respondent asserted a deficiency is the year 1920. As our jurisdiction is limited under the statute to the years in which a deficiency is asserted, it follows that the petition will have to be dismissed as to each and every year here involved except the year 1920. *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255.

The actual cash value of the leasehold has, in our opinion, been definitely established by the petitioner to have been $43,000 at the time acquired. Two offers to purchase the entire property for $75,000 were made just prior to incorporation by separate parties, and both parties subsequently offered still larger amounts for the property. The respondent admitted that the plant and equipment cost $32,000, being the value urged by the petitioner, which leaves $43,000 to be allocated to the leasehold. It is our opinion that the latter value should be used for depletion purposes.

*Judgment will be entered on 10 days' notice, under Rule 50.*

Considered by TRAMMELL, MURDOCK, and SIEFKIN.